502 F.2d 188
 CELANESE CORPORATION and Fiber Industries, Inc., Appellants,
v.
the DUPLAN CORPORATION et al., Appellees.
CELANESE CORPORATION and Fiber Industries, Inc., Appellants,
v.
LEESONA CORPORATION et al., Appellees.
In the matter of Subpoenas for Testimony of ATELIERS
ROANNAIS de CONSTRUCTIONSTEXTILES and ARCT, Inc.
 Nos. 73-1930, 73-2450.
 United States Court of Appeals, Fourth Circuit.
 Argued April 4, 1974.
Decided Aug. 15, 1974.
 
 Mary Helen Sears, Washington, D.C. (Edward S. Irons, Washington, D.C., on brief), for appellants in Nos. 73-1930 and 73-2450.
 James N. Buckner, New York City, and Arthur O. Cooke, Greensboro, N.C. (Granville M. Brumbaugh, Brumbaugh, Graves, Donohue & Raymond, New York City, and Cooke & Cooke, Greensboro, N.C., on brief), for appellees, Ateliers Roannais de Constructions Textiles and Arct, Inc., in Nos. 73-1930 and 73-2450.
 Butler, Means, Evins & Browne, Spartanburg, S.C., and Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on brief, for appellees, Deering Milliken Research Corp., and others in Nos. 73-1930 and 73-2450.
 Before ADAMS,[1] FIELD and WIDENER, Circuit Judges.
 FIELD, Circuit Judge:
 
 
 1
 These consolidated appeals involve the efforts by counsel for Celanese Corporation and Fiber Industries, Inc., (hereinafter referred to as 'petitioner') to take the oral deposition of Henri Crouzet for use in a patent suit presently pending in the Southern District of Florida. Crouzet, a citizen and resident of France, is president of Ateliers Roannis de Constructions Textiles (hereinafter referred to as 'ARCT-France') and ARCT, Inc., both of which companies are parties in a complex patent and antitrust suit pending in the District of South Carolina. Neither of the petitioners is a party to the South Carolina action and neither ARCT-France, ARCT, Inc., nor Crouzet is a party to the Florida litigation.
 
 
 2
 The background of the South Carolina appeal may be briefly stated as follows: Upon learning that Crouzet would be in South Carolina for the taking of his deposition in that litigation, counsel for petitioners noticed his deposition in the Florida litigation for the purpose of obtaining a subpoena from the Clerk of the District Court of South Carolina pursuant to Rule 45(d), Fed.R.Civ.P. They were advised, however, that the court had directed the Clerk not to issue subpoenas directed to any French witnesses during the time they were present in South Carolina for depositions incident to the South Carolina litigation. Eventually, a formal motion for a subpoena was filed by the petitioners and after a hearing thereon the court entered an order to the effect that during Crouzet's presence in the United States for the purpose of giving testimony in the South Carolina litigation he should be immune from service of subpoena or other process in the litigation pending in the Southern District of Florida. The petitioners appeal from this order.
 
 
 3
 We think the district judge acted appropriately in immunizing Crouzet from the service of the subpoena during the time he was present in the District of South Carolina for the purpose of giving his deposition in the litigation pending in that district. This action of the court was consonant with the general rule that witnesses and parties attending a judicial proceeding outside the territorial jurisdiction of their residence are immune or exempt from service of civil process in another suit while in attendance at court in that jurisdiction. Stewart v. Ramsay, 242 U.S. 128, 37 S.Ct. 44, 61 L.Ed. 192 (1916); Moylan v. AMF Overseas Corporation, 354 F.2d 825 (9 Cir. 1965); Shapiro & Son Curtain Corp. v. Glass, 348 F.2d 460 (2 Cir. 1965).
 
 
 4
 In Stewart v. Ramsay, supra, the nature of the privilege was stated in the following terms:
 
 
 5
 'The true rule, well founded in reason and sustained by the greater weight of authority, is that suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going.'
 
 
 6
 242 U.S. at 129, 37 S.Ct. at 45.
 
 
 7
 Quoting from Parker v. Hotchkiss, 18 Fed.Cas. No. 10,739, p. 1137, 1 Wall.Jr. 269, (C.C.E.D.Pa.1849), the Court went on to say:
 
 
 8
 "The privilege which is asserted here is the privilege of the court, rather than of the defendant. It is founded in the necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify."
 
 
 9
 Id., at 130, 37 S.Ct. at 46.
 
 
 10
 The present case falls within the classic rationale of Stewart since, aside from the fact that the intrusion of the petitioners upon the complex proceedings in South Carolina would have been most disruptive, it appears that Crouzet was in ill health and was exceedingly reluctant to make the trip from France to the United States for the purpose of giving his deposition. Accordingly, the action of the district judge in No. 73-1930 is affirmed.
 
 
 11
 Coincidentally with the proceedings in South Carolina the petitioners attempted to subject Crouzet to a subpoena issued out of the middle district of North Carolina through the service of subpoenas directed to ARCT-France and ARCT, Inc., the latter being a North Carolina corporation with its principal office and place of business in Guilford County, North Carolina. The subpoenas were served upon a vice-president of ARCT, Inc., but in each instance was directed to the corporations 'through Henri Crouzet, its President'. The district court did not pass upon the serious question of whether Crouzet as an individual could properly be subpoenaed through service upon the corporations neither of which was a party to the Florida litigation, but acting under Rule 26(c), Fed.R.Civ.P., entered an order quashing the subpoenas. The order expressly provided, however, that it was without prejudice to the rights of the plaintiffs to again apply for the issuance of such subpoenas upon a showing 'that the use of letters rogatory (28 USC 1781; Federal Rules of Civil Procedure 28(b)) or stipulations allowing the use of the South Carolina depositions in the Florida litigation, will not produce the information needed by the plaintiffs, or some other reasonable method will not suffice to gain needed evidence from Henri Crouzet.' The court also left open the question of the authority or jurisdiction to issue subpoenas for Crouzet in such fashion in the Middle District of North Carolina.
 
 
 12
 Our review of the record persuades us that under the circumstances of this case there was no abuse of discretion by the district judge in entering this protective order and quashing the subpoenas. Cf., Hyam v. American Export Lines, 213 F.2d 221 (2 Cir. 1954). See Tiedman v. American Pigment Corporation, 253 F.2d 803 (4 Cir. 1958). Accordingly, the order of the district court in No. 73-2450 is also affirmed.
 
 
 13
 Affirmed in 73-1930.
 
 
 14
 Affirmed in 73-2450.
 
 ADAMS, Circuit Judge (dissenting):
 
 15
 On these appeals, the majority, in affirming the order of the District Court of South Carolina and the order of the District Court for the Middle District of North Carolina, has decided intricate questions relating to the operation of the discovery provisions of the Federal Rules of Civil Procedure in the context of multidistrict litigation. However, the posture of this case does not, in my judgment, permit consideration of the merits of these appeals. Rather, deference to the admonition that we are to decide only justiciable controversies leads me to the conclusion that these cases should be regarded as moot.[1]
 
 
 16
 Celanese Corporation and Fiber Industries, Inc. (hereinafter Celanese) are plaintiffs in an action against Leesona and other patentees, in the District Court for the Southern District of Florida. Celanese seeks to depose for the purposes of the Florida litigation Henri Crouzet, the principal executive of Ateliers Roannais de Constructions Textiles (ARCT-France) and ARCT, Inc., a North Carolina subsidiary of ARCT-France.[2] Neither Crouzet nor the ARCT corporations are parties to the Florida suit. The ARCT companies, however, are defendants in a related suit in the South Carolina district court. Celanese, aware that Crouzet, a French citizen, was scheduled to come to South Carolina in July, 1973,[3] filed a motion for a subpoena in the South Carolina district court to compel Crouzet to appear for a deposition with respect to the Florida litigation once Crouzet had completed his duties with respect to the South Carolina suit.
 
 
 17
 On July 13, 1973, the South Carolina district court ordered that Henri Crouzet was to be immune from any subpoena or other process 'while he is within the jurisdiction of this Court to attend proceedings in this Court for the purpose of giving testimony in (the South Carolina) action . . ..' This order, as the relevant memoranda and argument confirm, was designed to protect Crouzet for the limited period he was to be in South Carolina to offer testimony during the course of a deposition concerning the litigation taking place in the South Carolina district court. The deposition in the South Carolina suit has now been completed and Crouzet has long since returned to France, thus rendering any decision with respect to the propriety of the July 13, 1973 order of the South Carolina district court, for all practical purposes in terms of this case, academic. I would, therefore, vacate the July 13th order and remand with a direction that the South Carolina district court dismiss appellants' motion for a subpoena as moot.[4]
 
 
 18
 Apprised that efforts to secure Crouzet's testimony through the South Carolina district court had failed, Celanese caused subpoenas to be issued by the Clerk of the North Carolina district court. The ARCT companies and Crouzet moved in the North Carolina district court to quash these subpoenas, and requested an appropriate protective order. The North Carolina district court entered an order requiring Celanese to make extensive efforts other than by way of depositions to secure information allegedly possessed by Crouzet, before taking Crouzet's deposition. Such relief does not appear, on its face, to be moot. There is some suggestion in the memorandum issued by the North Carolina district court that it was Celanese's intention that Crouzet's testimony be secured pursuant to the subpoenas while Crouzet was present in South Carolina to participate in the litigation pending before the district court there. Nevertheless, the order of the North Carolina district court requiring Celanese to make discovery efforts, other than by depositions, indicates that Celanese will be unable to obtain Crouzet's deposition at any time unless Celanese completes the preliminary steps required by the North Carolina order, and the results produced by such preliminary steps are determined to be inadequate. The North Carolina district court's order, therefore, would seem, at first blush, to have continuing effect despite Crouzet's return to France.
 
 
 19
 However, at oral argument, counsel for the ARCT companies and Crouzet agreed that Crouzet's deposition may be taken in France, and counsel for Celanese expressed willingness to conduct the necessary proceedings in France. Counsel for the ARCT companies and Crouzet did suggest that certain guidelines should be imposed, presumably in light of Crouzet's health and the extensive testimony he has already given in the other companion cases. In view of the statements by counsel indicating that there exist no major impediments to the taking of Crouzet's deposition in France, the dispute among the parties concerning the conditional refusal by the North Carolina district court to permit a deposition would seem at an end, and hence our authority to rule on the merits of the order of the North Carolina district court appears dissipated. Accordingly, the proper course would be, in my judgment, to vacate that order and to remand with a direction that the North Carolina district court dismiss the motion of the ARCT companies and Crouzet to quash the subpoenas issuing out of the North Carolina district court and for a protective order. The ARCT companies and Crouzet, of course, may still desire to petition the North Carolina district court for another protective order to establish guidelines for the taking of Crouzet's deposition in France. Keeping in mind the already protracted nature of this litigation, it would seem that further proceedings relating to Crouzet's deposition should be conducted expeditiously.
 
 
 20
 For the foregoing reasons, I respectfully dissent from the majority's disposition of these appeals on the merits.
 
 
 
 [1]
 United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 [1]
 See Wright, Federal Courts 35-36 (2d ed. 1970)
 
 
 [2]
 ARCT-France is a manufacturer of false twist texturing machinery competitive with that of Leesona. In the United States, ARCT-US acts as the sales, repair and servicing agent for the machinery manufactured by ARCT-France
 
 
 [3]
 Illness delayed Crouzet's trip to South Carolina until, it seems, August
 
 
 [4]
 See United States v. Munsingwear, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950)